UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CASSANDRA H.,

              Plaintiff,              **DECISION AND ORDER**

    v.

                                               6:20-CV-6776-EAW

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

# INTRODUCTION

Represented by counsel, Plaintiff Cassandra H. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for social security income benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 13; Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 15) is denied.

Case 6:20-cv-06776-EAW   Document 19   Filed 11/17/22   Page 2 of 13

**BACKGROUND**

Plaintiff protectively filed her application for SSI on June 12, 2017. (Dkt. 11 at 107, 178-83).[1] In her application, Plaintiff alleged disability beginning June 28, 2016. (*Id*. at 178). Plaintiff's application was initially denied on November 16, 2017. (*Id*. at 96-06). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John Ramos on July 30, 2019. (*Id*. at 38-58). On August 30, 2019, the ALJ issued an unfavorable decision. (*Id*. at 19-32). Plaintiff then requested review by the Appeals Council, which the Council denied on August 4, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 5-9).

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

- 2 -

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.  **The ALJ's Decision**

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920 and determined that Plaintiff had not engaged in substantial gainful work activity since June 12, 2017, the alleged onset date. (Dkt. 11 at 21).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: obesity, degenerative joint disease of the right knee and the lumbar spine, as well as fibromyalgia. (*Id*.). The ALJ also determined that Plaintiff's anxiety, depression, attention

deficit hyperactivity disorder, obstructive sleep apnea, paraspinal cystic lesion, and carpal tunnel syndrome were non-severe impairments. (*Id*. at 22).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 26). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a). (*Id*. at 26).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 31). The ALJ then considered Plaintiff's age, education, and work experience to conclude that she was not disabled from the date of her application through the date of the ALJ's decision. (*Id.*).

## II. Remand for Further Proceedings is Warranted

Plaintiff asks this Court to remand this matter to the Commissioner for further proceedings because the ALJ erred in: (1) limiting her to sedentary work despite her moderate limitations in prolonged sitting identified by the consultative examiner; (2) evaluating her subjective complaints; and (3) finding that she had no severe mental impairments. (Dkt. 13-1 at 10-22). For the reasons discussed below, the Court finds that remand is warranted.

In determining that Plaintiff was capable of performing sedentary work, the ALJ relied on a medical source statement of the consultative examiner Despina Isihos, D.O. ("Dr. Isihos"), who opined that Plaintiff had moderate restrictions for prolonged sitting, standing, walking, climbing, heavy lifting, squatting, and kneeling. (Dkt. 11 at 326). The

ALJ found Dr. Isihos's opinion to have "some persuasive value" because even though her findings about Plaintiff's moderate restriction for prolonged sitting, standing, walking, and heavy lifting were supported and consistent with Plaintiff's ability to work at the sedentary level, Dr. Isihos's opinion regarding Plaintiff's postural limitations was not supported by Plaintiff's ability to drive, vacuum, shop, and care for four children. (*Id*. at 30). While the Court does not disagree with the ALJ's determination that Dr. Isihos's findings were supported by her observations of Plaintiff during the examination and consistent with the record, it disagrees with the ultimate conclusion that the ALJ reached in evaluating Dr. Isihos's opinion, *i.e.*, that Plaintiff was capable of performing sedentary work.

Indeed, during her examination, Dr. Isihos found Plaintiff to have decreased range of motion in her back, positive single leg raises on the right side, and limited range of motion in her shoulders, hips, and right knee. (*Id*. at 324). Plaintiff also had 16 positive trigger points for fibromyalgia, except for the right lateral epicondyle and left knee. (*Id*. at 324-25). Based on her examination, Dr. Isihos diagnosed Plaintiff with low back pain, fibromyalgia, bilateral knee pain, carpal tunnel, depression and anxiety, sleep apnea, and obesity, and concluded that she had a moderate restriction for prolonged sitting, standing, walking, climbing, heavy lifting, squatting, and kneeling. (*Id*. at 325).

The Commissioner argues that Dr. Isihos's findings support the RFC determination that Plaintiff was capable of sedentary work because moderate limitations are not generally work-preclusive. (Dkt. 15-1 at 21-22). Although the Court does not disagree that moderate limitations are not inherently inconsistent with the ability to perform sedentary work, the Commissioner's argument misses the mark.

As a general matter, the regulations provide that sedentary work requires an individual to remain in a seated position for most of the day, though "a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See* 20 C.F.R. § 416.967(a). "Occasionally . . . would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." *Titles II & XVI: Determining Capability to Do Other Work-Implications of A RFC for Less Than A Full Range of Sedentary Work*, Soc. Sec. Ruling ("SSR") 96-9P, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) (internal quotations omitted).

It has been well-recognized that a claimant's moderate limitations for sitting do not necessarily preclude sedentary work. *See Kevin M. v. Kijakazi*, No. 20-CV-6802L, 2022 WL 2704527, at *2 (W.D.N.Y. July 12, 2022) ("As district courts within this Circuit have repeatedly recognized, moderate limitations in prolonged sitting are not necessarily inconsistent with the ability to perform the up-to-six hours of sitting (at approximately 2-hour intervals, interrupted by morning and afternoon breaks, and a lunch period) required for sedentary work.") (collective cases); *see generally Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("[t]he [Commissioner's] regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight"). Moreover, the regulations provide for some flexibility in a claimant's ability to perform sedentary work where the claimant is allowed to take "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals" during an eight-hour workday.

*See* SSR 96-9P, 1996 WL 374185, at \*6; *see also Josielewski v. Berryhill*, No. 1:15-CV-00728-MAT, 2018 WL 903471, at \*5 (W.D.N.Y. Feb. 15, 2018) ("to be capable of performing sedentary work, an individual generally is required to work in two hour periods, and is not required to sit for six unbroken hours").  However, even with the ordinary breaks, the claimant's ability to sit for a total of six hours is crucial for the sedentary work analysis.  *See* SSR 96-9P, 1996 WL 374185, at \*6 ("If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.").

Equally important, where, as here, a claimant is assessed not only with a sitting limitation, but also with moderate limitations for standing and walking, a finding of sedentary work may be precluded.  *See, e.g.*, *Steven C. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06596 EAW, 2022 WL 855000, at \*6 (W.D.N.Y. Mar. 22, 2022) ("moderate to severe limitations for standing and walking which, coupled with the sitting limitation, are not consistent with an RFC requiring plaintiff to perform sedentary work") (collective cases).  This proposition is particularly important here in light of Dr. Isihos's opinion that Plaintiff was moderately restricted not only in prolonged sitting, but also in prolonged standing and walking. (Dkt. 11 at 326).  However, the ALJ, while finding Dr. Isihos's opinion pervasive, failed to analyze how Plaintiff's limitation in sitting could impact her ability to sit for six hours, and to consider Plaintiff's moderate limitations in standing and walking to determine whether she was able to stand or walk for two hours in an eight-hour workday required for sedentary work.  That is not to say that the RFC determination had to "perfectly correspond" with Dr. Isihos's opinion cited by the ALJ; rather, the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the

record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted); *see also Smith v. Comm'r of Soc. Sec.*, No. 19-CV-6194-LJV, 2020 WL 4904956, at *3 (W.D.N.Y. Aug. 19, 2020) (while the RFC finding does not need to track any medical opinion, the ALJ must still construct "an accurate and logical bridge between his recitation of the facts and the conclusions he reached").  Even though the ALJ found the opinion to be consist with the record, he did not make a logical connection between Plaintiff's moderate limitations in sitting, standing, and walking, and the postural requirements of sedentary work, and, instead, simply concluded that Plaintiff's limitations were consistent with sedentary work.  That alone, without any further explanation, was improper. *See e.g.*, *Luis R. v. Comm'r of Soc. Sec.*, No. 20-CV-6257-FPG, 2021 WL 3615703, at *4 (W.D.N.Y. Aug. 16, 2021) (remanded where the ALJ failed to explain how the opinion that plaintiff had moderate limitation in prolonged sitting translated into the ALJ's conclusion that plaintiff could sit for six hours); *Toomey v. Colvin*, 15-CV-730-FPG, 2016 WL 3766426, at *4 (W.D.N.Y. Aug. 3, 2016) (remanded where the ALJ failed to reconcile his finding that plaintiff could perform sedentary work with a medical opinion that she was moderately limited in sitting for a long time).

      Notably, the review of the record casts serious doubt on whether Plaintiff was, in fact, capable of sitting for six hours, or standing and walking for two hours to perform the requirements of sedentary work.  The Court is not saying she was not; however, the record contains sufficient evidence demonstrating that Plaintiff's sitting, standing, and walking was significantly limited, and it is precisely why the ALJ's analysis about how Plaintiff's limitations translated into her RFC designating sedentary work was particularly important.

Specifically, the record is replete with Plaintiff's treatment notes addressing her complaints of debilitating symptoms stemming from severe back, knee, and wide-spread muscle pain. Plaintiff reported having back pain since the age of 17, and consistently complained about her symptoms throughout the relative period. (Dkt. 11 at 297, 321). She indicated that she could not lift more than five pounds, stand longer than 5-10 minutes, sit longer than 15-20 minutes, or walk more than 400 feet—the length of her driveway. (*Id*. at 51, 209, 214). Some days, Plaintiff could only walk 100 feet without assistance and required a break of 20-30 minutes before she could continue walking. (*Id.* at 214). She could no longer cook full-course meals or do laundry due to her standing limitation, and required her family's help with household chores, shopping, and taking care of her children. (*Id*. at 49, 51, 209-11, 323). Lastly, Plaintiff indicated that her pain was aggravated by movement, and was worse with prolonged sitting and standing at 20-30-minute intervals. (*Id.* at 52-53, 301, 321).

These subjective complains were consistent with Plaintiff's reports to her treating providers when she routinely sought help for having diffuse severe and radiating pain in her back, knees, joints and muscles, persistent fatigue, as well as decreased joint mobility and stiffness. (*Id.* at 253, 256-57, 259, 262, 265-66, 268, 271-72, 274, 276-77, 288-90, 292, 295, 298, 301, 303, 307, 312, 321, 324-25, 334, 336, 339, 392, 396, 406, 410, 563, 590, 626, 628, 634). Upon examination, Plaintiff often demonstrated a limp, positive straight leg test, 18 out of 18 points of tenderness in her back, neck, joints, and upper and lower extremities, as well as the decreased range of motion in all directions in her thoracic and lumbar back. (*Id*.). The record demonstrates that Plaintiff did not get any relief from

medication or physical therapy, and surgical intervention for her back pain was not recommended. (*Id*. at 563, 567, 595). As a result of her examinations, Plaintiff's treating sources repeatedly assessed her with musculoskeletal pain and fibromyalgia.

Because substantial evidence supported by Dr. Isihos's conclusion that Plaintiff had moderate limitations in sitting, standing, and walking, the ALJ was required to provide a sufficient explanation as to why, despite the limitations, Plaintiff was capable of performing sedentary work. *See Mack v. Comm'r of Soc. Sec.*, No. 17-CV-991, 2019 WL 2529386, at *5 (W.D.N.Y. June 19, 2019) (while a moderate limitation in sitting is not inconsistent with sedentary work, "it does not absolve the ALJ of his legal duty to explain why such a limitation, when diagnosed by a medical source given significant weight by an ALJ, was not incorporated into an RFC designating sedentary work.").

Likewise, the ALJ was required to reconcile Plaintiff's frequent need to change her position to alleviate back and knee pain, as well as stiffness and muscle pain associated with fibromyalgia, and discuss what impact, if any, it might have on the requirements of sedentary work that he determined Plaintiff could perform. Although mentioned in the ALJ's decision, it is unclear how the ALJ determined that Plaintiff could perform sedentary work notwithstanding substantial evidence in the record demonstrating that Plaintiff repeatedly alternated between sitting and standing to alleviate her pain. *See Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work*, SSR 83-12, 1983 WL 31253, at *4 (S.S.A. Jan. 1, 1983) (An individual who "may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting

. . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work, . . . or the prolonged standing or walking contemplated for most light work. . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."); *see also* SSR 96-9p, 1996 WL 374185, at *7 ("[t]he RFC assessment must be specific as to the frequency of [an] individual's need to alternate sitting and standing" when the "individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking)").  Therefore, without the ALJ's proper analysis, the Court cannot conclude whether the RFC determination was supported by substantial evidence.

Accordingly, the ALJ's failure to incorporate Plaintiff's moderate limitations in prolonged sitting, standing, or walking, and to reconcile her need to change positions with the requirements of sedentary work requires remand of this matter for further administrative proceedings. *See Rosario v. Colvin*, No. 1:14-CV-00191 (MAT), 2016 WL 2342008, at *3 (W.D.N.Y. May 4, 2016) (remand was warranted due to the ALJ's failure to incorporate moderate sitting and standing limitations into plaintiff's RFC and provide an explanation why the limitations were not incorporated into the RFC).  On remand, the ALJ is required to consider all the limitations found by Dr. Isihos, as well as the other evidence of record, to determine Plaintiff's RFC.  Because the Court has determined that remand of this matter for further administrative proceedings is necessary, it declines to address Plaintiff's remaining arguments.  *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to address Plaintiff's remaining arguments "devoted to the question whether substantial evidence supports

various determinations made by [the] ALJ" where the court had already determined that remand was warranted).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent the matter is remanded for further administrative proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:	November 17, 2022
	Rochester, New York